**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

|  |  |  |
|---|---|---|
| **THE CINCINNATI INSURANCE COMPANY,** | § § § § | |
| **Plaintiff,** | § § § | |
| **v.** | § § § | **CIVIL NO. 1:25-CV-36-ADA** |
| **CPVF III COBBLESTONE, LLC,** | § § § | |
| **Defendant.** | § § | |

## ORDER

Before the Court are Plaintiff The Cincinnati Insurance Company's Motion for Summary Judgment (Dkt. No. 19) and Defendant CPVF III Cobblestone, LLC's Motion for Partial Summary Judgment (Dkt. No. 20). The Court has reviewed both motions, the relevant responses and replies, the applicable laws, and the record of this case. The Court finds that Plaintiff's Motion should be denied and that Defendant's Motion should be granted-in-part.

## I.    BACKGROUND

On September 17, 2024, Patrick Sniffen, individually, and as the natural father and next of kin of Decedent Justin Sniffen ("Underlying Plaintiff") filed the Renewal Complaint for Wrongful Death Damages ("Underlying Complaint"). The Underlying Plaintiff asserts claims against CPVF III Cobblestone, LLC ("CPVF"), Atlanta Custom Wraps, LLC ("ACW"), Justin Norton ("Norton"), John Does (1-5) and ABC Corporations (1-5).

### a.    The Incident

The Underlying Complaint alleges that Justin Norton is a notorious "social media influencer/stuntman," whose fame is based on his persona of "speeding, reckless driving, racing,

fast cars" and other stunt/race-related performances. Pl.'s Mot. Summ. J. Ex. A ¶¶ 21, 23. ACW participates in Norton's ventures, and both receive monetary benefits from their street racing and stunt displays on social media. *Id.* at ¶ 24. CPFV owns the premises where the underlying incident took place, and Cincinnati Insurance Company provides liability insurance to CPFV in the form of a Commercial Package Policy. *Id.* at 27; Pl.'s Mot. Summ. J. at 1.

On November 9, 2022, the day of the accident, CPVF gave express and/or implied permission to Norton, ACW, and John Does 1-5 to construct a "makeshift" racetrack that was "fraught with safety hazards" on the premises owned by CPVP. *Id.* at ¶¶ 26–29. Those safety hazards involved "personal vehicles of…employees" and a "car hauler" to block off a portion of the racetrack, failure to remove pine straw and other debris from the track, numerous obstructions to visibility, lack of sufficient lighting, an unreasonably bumpy surface, and lack of sufficient runoff areas for out-of-control racing vehicles to safely stop. *Id.* at ¶¶ 30–35.

Later that same day, Justin Sniffen "was entrusted with a Praga Shifter kart" (hereinafter referred to as "the Kart") to drive on the newly constructed racetrack, in order to obtain footage that would further Norton and ACW's social media and marketing ventures. *Id.* at ¶¶ 38, 41. The Kart could exceed speeds of eighty (80) mph and "was modified with racing slick tires that were specifically designed for use only on a raceway." *Id.* at ¶ 40.

As Justin Sniffen drove the Kart around the racetrack, the Kart's racing slick tires hit a patch of pine straw and caused it to spin out of control. *Id.* at ¶ 42. While spinning, the Kart clipped one of the parked vehicles that was bordering the racetrack then slammed into the car hauling trailer. Justin Sniffen sustained major injuries as a result of the crash and succumbed to those injuries shortly thereafter. *Id.* at ¶¶ 43–44.

b.  **The Insurance Policy**

The insurance policy in dispute includes a Commercial General Liability Policy (hereinafter referred to as "CGL Policy") and a Commercial Umbrella Liability Policy (hereinafter referred to as "UL Policy") issued by Cincinnati to CPVF. The CGL Policy provides limits of $1,000,000 per occurrence and $2,000,000 in the aggregate, while the UL Policy contains limits of $10,000,000. Pl.'s Mot. Summ. J. at 7–8. Coverage under the UL Policy is available if damages exceed the CGL Policy or if the CGL Policy does not afford coverage for the alleged damages. *Id.* at 8. Both policies include definitions and examples for "mobile equipment"; the relevant section of those definitions read:

> "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:
>
> a.      Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

Pl.'s Mot. Summ. J. Ex. B at 112, 212.

Furthermore, the CGL Policy contains a "mobile equipment" exclusion, excluding coverage for:

> "Bodily injury" or "property damage" arising out of:
>
> 1.      The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or
>
> 2.      The use of "mobile equipment" on, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

*Id.* at 99.

The UL Policy incorporates this definition and includes a specific "MOBILE EQUIPMENT SUBJECT TO MOTOR VEHICLE INSURANCE LAWS – LIMITATION" endorsement, which further restricts coverage for:

Any liability arising out of the ownership, maintenance, occupancy, operation, use, "loading or unloading" of any land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law, unless such liability is covered by valid and collectible "underlying insurance" as listed in the Schedule of Underlying Insurance, and then only for such hazards for which coverage is afforded by such "underlying insurance", unless otherwise excluded by this Coverage Part.

*Id.* at 228.

## II.     LEGAL STANDARD

Summary judgment is proper where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. If the record, taken as a whole, could not lead a rational fact finder to find for the non-moving party, then there is no genuine issue for trial. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In determining whether a genuine issue of material fact exists, the court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Harville v. City of Houston, Mississippi*, 945 F.3d 870, 874 (5th Cir. 2019); *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371–372 (5th Cir. 2002). Where the non-moving party will bear the burden of proof at trial on a dispositive issue, that party also bears the burden of production to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Under Texas law, an insurer has two contractual duties under a liability insurance policy: (1) the duty to defend its insured in a "suit" against allegations that potentially state a claim within policy coverage; and (2) the duty to indemnify its insured as a result of any claim, judgment or settlement that is actually covered by the policy. *See Pharr-San Juan-Alamo Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Casualty Joint Self Ins. Fund*, 642 S.W.3d 466, 471 (Tex. 2022) (discussing the distinct duties which arise from contracts for insurance). The duty to defend is

distinct from and broader than the duty to indemnify because it is triggered by the potentiality of coverage, regardless of the ultimate truth of the facts. *See Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490–91, 493 (Tex. 2008) (holding that the insurers owed a duty to defend because the underlying cell phone radiation class actions alleged "other damages" that potentially supported a covered claim, despite the insurer's argument that the plaintiffs primarily sought non-covered preventative remedies like headsets).

When determining an insurer's duty to defend, courts in Texas apply the "eight corners" rule and only consider the allegations contained within the lawsuit's underlying complaint and relevant insurance policy. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 527–28 (5th Cir. 2004) (citing *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)). An insurer's duty to defend is determined exclusively by the factual allegations contained in the underlying complaint, rather than the legal theories or labels asserted. *See Ewing Constr. Co v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014); *Zurich*, 268 S.W.3d at 487. Doubts regarding the duty to defend are resolved in favor of the insured, and the allegations must be liberally construed to find coverage. *Zurich*, 268 S.W.3d at 491.

The insured bears the initial burden of establishing that its liability is within the scope of coverage of the policy, then the burden switches to the insurer to prove the applicability of a policy exclusion. *See JAW The Pointe, L.L.C. v. Lexington Ins. Co.,* 460 S.W.3d 597, 603 (Tex. 2015). An insurer is only relieved of the duty to defend if the complaint conclusively establishes that there is no possible factual or legal basis for coverage. *See Monroe Guar. Ins. Co. v. BITCO Gen Ins. Corp.*, 640 S.W.3d 195, 201–02 (Tex. 2022) (reaffirming that the duty to defend is governed strictly by the "eight corners rule" and that an insurer is not relieved of its defense obligation unless the underlying pleadings fail to allege any clam that could potentially trigger coverage under the

policy terms). The insurer's duty to indemnify generally depends on facts proven in the underlying lawsuit. *See Farmers Tex. Cnty. Mut Ins. Co. v Griffin*, 955 S.W.2d 81, 84 (Tex. 1997). However, "the duty to indemnify is justiciable before the insured's liability is determined…when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify*." *Id.* (emphasis in original).

### III.    ANALYSIS

### a.  Cincinnati Insurance Company's Motion for Summary Judgment

Cincinnati Insurance Company has submitted a motion for summary judgment, seeking declarations from this Court regarding its insurance obligations, if any, under the CGL Policy and UL Policy that it issued to CPVF. Pl.'s Mot. Summ. J. at 1. Specifically, Cincinnati seeks declarations that, as a matter of law, Cincinnati neither has a duty to defend nor a duty to indemnify CPVF under the CGL Policy or the UL Policy for a fatal injury occurring on a premises owned by CPVF as alleged in an underlying liability lawsuit. *Id.*

### 1.  The Duty to Defend

Cincinnati claims that it does not have a duty to defend under either the CGL Policy or the UL Policy because the Kart at issue in this case falls under the "mobile equipment" exclusions contained in both policies. *Id.* at 5. Both policies define "mobile equipment" as "land vehicles ... such as bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads." Pl.'s Mot. Summ. J. Ex. B at 112, 212. Cincinnati maintains that the phrase "and other vehicles designed for use principally off public roads" is a catch-all phrase encompassing the Kart, particularly because the underlying lawsuit alleges that the vehicle "was built to exceed speeds of eighty (80) mph and was modified with slick tires" for exclusive raceway use. Pl.'s Mot. Summ. J. at 12. Cincinnati also cites multiple dictionaries containing the word "go-kart" or "kart" which all share common descriptions as a motorized vehicle designed for racing. *Id.* at 11.

Cincinnati points to the Texas Supreme Court's decision in *Pharr-San Juan-Alamo Independent School Dist. v. Tex. Political Subdivisions Property/Casualty Joint Self-Insurance Fund*, where the court concluded that the loss giving rise to the underlying lawsuit was not covered under the policy because the subject golf cart was "not designed for public-road travel," and asks this Court to extend that logic to the Kart at issue in this case. 642 S.W.3d at 476–77.[1]

CPVF argues that the Kart does not constitute "mobile equipment" under the policy definition because of how "land vehicles such as bulldozers, farm machinery, forklifts" modifies "and other vehicles designed for use principally off public roads." Pl.'s Mot. Summ. J. Ex. B at 112, 212. CPVF points to *All Am. Ins. Co. v. Morris*, a factually similar case where the court was considering whether a go-kart constituted "mobile equipment." No. 4:11CV00041, 2013 WL 633588, at *9–10 (E.D. Va. Feb. 20, 2013).  There, the court reasoned:

> The use of the of the word "and" rather than "or," however, indicates that the "other vehicles designed for use principally off public roads" language is to be read in context of the proceeding limiting examples ("[b]ulldozers, farm machinery, forklifts") and their relative functions.

*Id.* at 10.

The *Morris* court used the interpretive cannon of *ejusdem generis*, which dictates that general terms following a list of specific items must be interpreted narrowly, encompassing only those things that share the same characteristics as the specifically enumerated examples. *Id.* at 9. CPVF acknowledges that while *Morris* was decided under Illinois law by a Virginia court, it is

---

[1] *Pharr*'s holding was far narrower than Cincinnati describes. There, the court held that the golf cart was not a covered "auto" because it was not manufactured for public road travel.[1] *Pharr,* 642 S.W.3d at 476–77. Beyond that narrow holding, the court never reached the issue of whether the golf cart was considered "mobile equipment." *Id*. Nevertheless, *Pharr* remains instructive to the present dispute because it developed the "design intent" test, which mandates that a vehicle's classification be determined by its manufacturer's intended principal use rather than the "ultimate possibility" of where it can be driven. *Id.* at 476.

consistent with Texas law on policy interpretation principles. *See Lubbock Cnty. Hosp. Dist. v. Nat'l Union Fire Ins. Co.*, 143 F.3d 239, 242 ("Under Texas law, the maxims of contract interpretation regarding policies operate squarely in favor of the insured.").

In its reply, Cincinnati then points to authority from Florida and Michigan to argue that the doctrine of *ejusdem generis* does not apply to the "mobile equipment" definition. The cases of *Hermitage Ins. Co. v. Orlando Club* and *Michigan Ins. Co. v. Posen Chamber of Commerce* both involved disputes over whether specialty vehicles—an ATV and modified demolition derby vehicle, respectively—qualified as "mobile equipment" under the policy definition. No. 6:07-CV-01890-Orl-35GJK, 2009 WL 10670282, at *6 (M.D. Fla. Apr. 6, 2009); No. 331454, 2017 WL 722158, at *1 (Mich. Ct. App. Feb. 23, 2017). In *Hermitage*, the court rejected the doctrine of *ejusdem generis*, ruling that the argument to limit the definition to industrial vehicles "neglects to acknowledge the catch-all phrase" in the policy: "any other vehicles designed for use principally off public roads." *Hermitage*, 2009 WL 10670282, at *6. Similarly, the *Michigan Ins. Co.* court declined to restrict the definition to *working* vehicles, finding that the plain meaning of the design-based "catch all" language encompassed vehicles intended for off-road use regardless of whether they resembled the specific examples of bulldozers or forklifts. *Michigan Ins. Co.*, 2017 WL 722158, at *2. Both courts essentially determined that the specific industrial examples did not narrow the broad, plain language following them.

Considering the broad duty to defend and the obligation to resolve disputes in favor of the insured, granting Cincinnati's motion is inappropriate because Cincinnati has not conclusively proved, under Texas law, that the Kart constitutes mobile equipment. The insurer's duty to defend is distinct and significantly broader than its duty to indemnify, arising whenever the allegations in an underlying complaint *potentially* fall within the scope of coverage. *Zurich*, 268 S.W.3d at 487,

490–91, 493. While Cincinnati relies on the "design intent" framework of *Pharr* and the "catch-all" interpretation of *Hermitage* and *Michigan* to categorize go-karts as "mobile equipment," these cases serve as persuasive authority and highlight the fact-intensive nature of determining a vehicle's primary purpose. *See Pharr*, 642 S.W.3d at 476–77; *Hermitage*, 2009 WL 10670282, at *6; *Mich. Ins. Co.*, 2017 WL 722158, at *1.

Conversely, the insured's reliance on the doctrine of *ejusdem generis*—as discussed in the arguments surrounding *Morris*—suggests a narrower interpretation that could potentially limit the exclusion to industrial or "working" vehicles. 2013 WL 633588, at *9. Because the insurer bears the heavy burden of affirmatively proving the applicability of an exclusion, the court must resolve all doubts regarding the duty to defend in favor of the insured, and the court must resolve all doubts in favor of the non-moving party, the existence of these competing legal theories and underlying factual questions regarding the go-kart's specific design prevent a finding that coverage is barred as a matter of law. *See Phar*, 642 S.W.3d at 471, 476–77; *Zurich*, 268 S.W.3d at 491; *Ewing*, 420 S.W.3d at 33. Because Cincinnati has failed to meet its burden of conclusively demonstrating that the mobile equipment exclusion applies as a matter of law, its motion for summary judgment seeking a declaration of no duty to defend should be denied.[2]

### 2. The Duty to Indemnify

Because Cincinnati has not established as a matter of law that it has no duty to defend, the question of its duty to indemnify is not ripe for adjudication. Under the standard set forth in *Griffin*, an insurer's duty to indemnify generally depends on actual facts proven in the underlying lawsuit

---

[2] CPVF also argues that Cincinnati's motion for summary judgment should be denied because, even if the Kart constitutes "mobile equipment," the underlying event is not "prearranged" as required by the policy exclusions. Because this Court is denying Cincinnati's motion for summary judgment on grounds that Cincinnati has not conclusively established that the Kart constitutes "mobile equipment," it is unnecessary to determine whether the underlying event was "prearranged" at this stage.

and is determined only after the underlying litigation draws to a close. 955 S.W.2d at 84. While a narrow exception allows for a determination of the duty to indemnify before the insured's liability is established, that exception only applies when "the insurer has no duty to defend *and the same reasons that negate that duty likewise negate any possibility the insurer will ever have a duty to indemnify*." *Id.* This exception cannot be invoked here because Cincinnati has failed to conclusively negate its duty to defend. Consequently, the issue of indemnity remains premature, and summary judgment on this point should be denied.

### b. CPVF III Cobblestone, LLC's Motion for Partial Summary Judgment.

CPVF III Cobblestone, LLC, moves for partial summary judgment, seeking a declaration from this Court that Cincinnati has a duty to defend in connection with the fatal injury occurring on a premises owned by CPVF as alleged in the underlying liability lawsuit. CPVF also seeks a declaration that it is entitled to additional damages under the Prompt Payment of Claims Act or, alternatively, breach of contract damages under CPRC § 38.001.

### 1. The Duty to Defend

Beginning with the duty to defend, Cincinnati maintains that it owes no duty because the Kart conclusively falls within the mobile equipment exception of the CGL and UL Policies, and this Court finds that argument unpersuasive. Under Texas law, an insurer is only relieved of its broad defense obligation if the underlying pleadings conclusively establish that there is no possible factual or legal basis for coverage, even while resolving all doubts in favor of the insured. *See Monroe Guar. Ins. Co.*, 640 S.W.3d at 201–02; *Pharr*, 642 S.W.3d at 471. As previously discussed, the facts within the "eight corners" of the policy and underlying lawsuit's complaint do not definitively characterize the Kart within the "mobile equipment" exception of the insurance policies or under Texas law. *Id.* at 471. Therefore, a potentiality of coverage exists under the policy which triggers Cincinnati's duty to defend CPVF. *Zurich*, 268 S.W.3d at 491.

Since Cincinnati has not discharged its heavy burden of proving that the "mobile equipment" exclusion applies as a matter of law, it is not relieved of its contractual obligation to provide a defense. Accordingly, CPVF's motion for partial summary judgment on the duty to defend should be granted.

### 2. Violation of the Prompt Payment of Claims Act and Attorney's Fees Under CPRC § 38.001

Finally, CPVF is seeking summary judgment on its claims for statutory penalties under the Texas Prompt Payment of Claims Act ("TPPA") or alternatively for attorney's fees under Chapter 38 of the Texas Civil Practice and Remedies Code. Under Texas law, "there can be no liability" under the TPPA "if the insurance claim is not covered by the policy." *Progressive Cty. Mut. Ins. Co. v. Boyd*, 117 S.W.3d 919, 922 (Tex. 2005). While the TPPA applies when an insurer wrongfully refuses to pay a defense benefit, the duty to indemnify—which determines actual coverage—is generally not ripe for determination until the underlying litigation "draws to a close." *Lamar Homes Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 16–17 (Tex. 2007); Tex. Ins. Code § 542.060(a); *Griffin*, 955 S.W.2d at 84; *LCS Corr. Servs., Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 668 (5th Cir. 2015). Furthermore, attorney's fees are typically unavailable for breach of an insurance contract under Chapter 38 because the chapter "does not apply to a contract issued by an insurer" subject to the Insurance Code's prompt payment provisions. TEX. CIV. PRAC. & REM. CODE § 38.0006.

Because the moving party bears the initial burden of proving its judgment as a matter of law, and because CPVF has failed to sufficiently brief the interplay between these statutory exclusions and the yet-to-be-determined duty to indemnify, a final finding of liability is premature. As the Court has not yet determined if the underlying claims are actually covered—only that they

are potentially covered for the purpose of the duty to defend—CPVF's motion for summary judgment on these two issues is denied without prejudice.

## IV.   CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff The Cincinnati Insurance Company's Motion for Summary Judgment (Dkt. No. 19) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant CPVF III Cobblestone, LLC's Motion for Partial Summary Judgment (Dkt. No. 20) is **GRANTED-IN-PART**. The Court finds that Plaintiff The Cincinnati Insurance Company owed and continues to owe Defendant Cobblestone a duty to defend in the Underlying Lawsuit. The remainder of Defendant's Motion is **DENIED without prejudice.**

**IT IS SO ORDERED.**

**SIGNED** on July 14, 2026

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE